UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BILLY BROWN,<br>      Plaintiff, | )<br>)<br>) |
| v. | )    CAUSE NO.: 3:24-CV-669-JVB-APR |
| C. HERR, *et al.*,<br>      Defendants. | )<br>)<br>) |

**OPINION AND ORDER**

Billy Brown, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1). Under 28 U.S.C. § 1915A, the Court must screen this pleading and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Brown is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Brown is incarcerated at Westville Correctional Facility. The Court notes that his complaint is somewhat confusing in places and his handwriting is also difficult to decipher. Giving his pleading liberal construction, he raises accusations against more than 20 Westville employees stemming from events that occurred between May 2024 and July 2024, when he had a medical issue with his hand and was also attacked by other inmates.

**A. Medical Care Claims**

He first alleges claims for the denial of medical care. Under the Eighth Amendment, inmates are entitled to adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To state a claim for the denial of this right, a prisoner must allege: (1) he had an objectively seriously medical need; and (2) the defendant acted with deliberate indifference to that medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The deliberate indifference standard imposes a "high hurdle," requiring a showing "approaching total unconcern for the prisoner's welfare." *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state an Eighth Amendment claim. *Hildreth v. Butler*, 960 F.3d 420, 425-26 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas*, 2 F.4th at 722.

Furthermore, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (citation omitted), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("[T]he Eighth Amendment does not require that prisoners receive unqualified access to health care." (citation and quotation marks omitted)). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. Because there is no one right way to practice medicine in the prison setting, courts must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at

2

965 (citation and quotation marks omitted). At the same time, a prisoner is not required to show that he was "literally ignored" to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Substantial delay in responding to an inmate's serious medical condition can reflect deliberate indifference, particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citation and quotation marks omitted).

Mr. Brown alleges that on May 10, 2024, he noticed a "small bump" on one of his fingers. That night, he told an unnamed dormitory officer (herein "John Doe Officer #1") about the bump, but the officer allegedly would not allow him to go to urgent care at that time. The pain and swelling got worse, and the following morning he put in a written request for medical care and also told Officer Evans (first name unknown) about the problem with his hand. The officer told him to talk to the sergeant on duty when he went to breakfast a short time later. On his way to breakfast he talked to Sergeant Drago, Sergeant Franklin, and Sergeant Porter (first names unknown) and asked them to call urgent care so that his hand could be evaluated. However, they allegedly took no action to help him.

By the following day, his hand had swelled to "two times its normal size" and was very painful. He told an unnamed dormitory officer on duty (herein "John Doe Officer #2") and showed him his hand, and the officer told him to go see the nurse. When he arrived in the medical unit, Lieutenant Talbot (first name unknown) told him he could not be there if he did not have a pass. He showed Lieutenant Talbot his hand, but the officer allegedly responded that he did not "give a damn" and that Mr. Brown needed to go back to his dormitory. He claims an unnamed nurse ("Jane Doe Nurse #1) overheard the conversation but "said nothing."

The next day, his hand was more swollen and painful. He asked Sergeant Drago to call urgent care, but this officer allegedly told him to talk to Lieutenant Talbot. Mr. Brown did so, but in response Lieutenant Talbot allegedly "slapped" his swollen right hand and said, "Now you got something to cry about." No one took him to the medical unit that day. The following day, he repeated his requests for care to these officers, as well as Sergeant Smith, Sergeant Hogan, and Lieutenant Bradford (first names unknown) but they allegedly did not take any action to help him. His hand continued to swell over the course of the next two weeks, and he repeated his requests for care to Captain Herr, Sergeant Brown, Lieutenant Due, and an unidentified "Sitcon Officer" (herein "John Doe Officer #3"). They took pictures of his hand and sent the pictures to staff in the urgent care. He still was not seen, however, and he had difficulty eating and sleeping during this period because of the pain. Finally, on June 10, 2024, Captain Herr saw that his hand was still swollen and personally walked him over to the medical unit. Within 45 minutes, he was sent to an outside hospital for treatment, where he was diagnosed with MRSA and underwent surgery on his hand.

When he returned from the hospital, he had a written order to have his dressing changed two times a day. He claims that no one in the medical unit sent him a pass so that he could have his bandages changed regularly. At some point he used toilet paper to dress the wound himself. He told Officer Campbell (first name unknown) what was happening, and she called urgent care. She also told him to talk to the sergeant on duty the next morning. An unidentified sergeant came to see him the next morning, took a picture of his hand, and sent it to urgent care. Shortly thereafter, he was seen by Nurse Paisley (first name unknown) who removed the toilet paper, took photos of his hand, and dressed the wound. He was then seen by Dr. Patel and Dr. Liaw (a non-party), after

which he was immediately admitted to the infirmary and given "very strong antibiotics." He remained in the infirmary for approximately three weeks.

Giving Mr. Brown the favorable inferences to which he is entitled at this stage, he has stated a plausible claim for the denial of medical care against Sergeant Drago, Sergeant Franklin, Sergeant Porter, Lieutenant Talbot, Sergeant Smith, Sergeant Hogan, and Lieutenant Bradford. He alleges that he alerted all of them to the serious problem with his hand, which ultimately required surgery at an outside hospital, but they allegedly took no steps to help him. In the case of Lieutenant Talbot, he allegedly slapped Mr. Brown's hand, knowing it was painful and swollen, and made a sarcastic comment to him. He further claims the delay in receiving proper treatment for his hand caused unnecessary pain and permanent injury. He will be permitted to proceed further on a claim for damages against these individuals.

As for John Doe Officer #1, his only involvement as described in the complaint was that Mr. Brown told him about a bump on his finger the first day he noticed it and the officer would not send him to urgent care at that time. It cannot be plausibly inferred from the minimal allegations he provides that the officer acted with a mental state akin to criminal recklessness by failing him to send him to urgent care immediately for what was at that time a small bump on his finger. There is also no indication this officer had further involvement as the problem grew more serious, and the officer cannot be held liable for the "misdeeds" of other prison employees. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Similarly, the only allegation against John Doe Officer #2 is that when Mr. Brown showed him his hand on the second day, the officer told him to go see the nurse. He claims Lieutenant Talbot later prevented him from seeing the nurse, but there is nothing to indicate John Doe Officer #2 was aware of this or was involved in any way in the decision to

turn him away from the medical unit, and the officer cannot be held liable for actions taken by Lieutenant Talbot. *Id.* These defendants will be dismissed.

As for Captain Herr, Sergeant Brown, Lieutenant Due, and John Doe Officer #3, Mr. Brown claims that when he reported his concern about his hand to them they took pictures and sent them to medical staff in the urgent care unit. The officers, who were not medical providers, cannot be held liable for the failings of medical staff, and there is insufficient factual content from which the Court could plausibly infer that the officers knew his problem was not being addressed and deliberately turned a blind eye to his need for care. *Burks*, 555 F.3d at 596. In fact, the complaint reflects that Captain Herr ultimately walked Mr. Brown over to the medical unit himself after seeing the problem had not been addressed, at which point he received prompt medical treatment. Likewise, he sues Officer Campbell, but her only involvement as alleged in the complaint was to call urgent care when he alerted her that his bandages were not being changed regularly. It can be discerned that she also took some step to alert a sergeant, who in turn went to speak with Mr. Brown about the problem and ultimately had him sent to the nurse. He has not alleged deliberate indifference by these officers.

He lists an "Officer Vasquez" in the portion of the complaint where he identifies the defendants but does not mention him in the narrative section of the complaint. It is unclear what personal role, if any, this officer had in these events. The officer cannot be held liable simply because he was on duty on the date of these events, nor can he be held liable for damages for the wrongdoing of other prison staff. *Burks*, 555 F.3d at 596. He has not alleged a plausible deliberate indifference claim against this officer.

He also sues members of the prison's medical staff. He sues Jane Doe Nurse #1, but her only involvement as alleged in the complaint was to overhear Lieutenant Talbot telling Mr. Brown

6

that he needed a pass to be in the medical unit. As a non-custodial staff member, she was entitled to defer to the lieutenant about matters impacting the safety and security of the facility. *See Burks*, 555 F.3d at 596. There is insufficient factual content from which the Court could plausibly infer that this nurse personally turned a blind eye to his health needs, or that she had reason to believe he could not receive medical care if he followed proper procedures for moving within the prison. He has not stated a plausible Eighth Amendment claim against this nurse.

As for Nurse Paisley, her involvement as described by the complaint was limited to taking the toilet paper off his wound, documenting the condition of his hand, and dressing his wound. It can be discerned from the complaint that a short time after he was seen by Nurse Paisley, he was seen by a doctor and then admitted to the infirmary. He has not plausibly alleged deliberate indifference by Nurse Paisley given her limited role in providing his care. *See Brown v. Osmundson*, 38 F.4th 545, 553 (7th Cir. 2022) (nurse was not deliberately indifferent where she "wrote down [the plaintiff's] symptoms, checked his vitals, relayed necessary information to [the doctor], and performed her assigned duties.").

He also sues Dr. Patel and another doctor named Dr. Jackson, who is not mentioned in the narrative section of the complaint. It is unclear what personal involvement Dr. Jackson had in these events, if any, and he cannot be held liable for the wrongdoing of other medical staff. *Burks*, 555 F.3d at 596. As for Dr. Patel, it can be discerned that after Mr. Brown saw this doctor, he was admitted to the infirmary and prescribed a powerful antibiotic. He is upset that Dr. Patel did not personally visit him to answer questions he had while he was in the infirmary, but the Eighth Amendment does not create a code of conduct for medical providers, nor does it encompass claims of negligence or medical malpractice. *Hildreth,* 960 F.3d at 425-26; *Walker*, 940 F.3d at 965. Mr. Brown makes clear that he received antibiotics, nursing care, and other treatment while he was in

the infirmary, and the court cannot infer from his allegations that Dr. Patel was deliberately indifferent to a serious medical need while he was in the infirmary.

In passing he mentions three more nurses, Nurse Alice, Nurse Kerri, and Nurse Narda, who apparently tended to him while he was in the infirmary. His only allegation against them is that they allegedly "covered for doctors, said they sent emails etc. nothing happened." As stated above, it is evident from his complaint that he received medication and other care in the infirmary, and the Court cannot plausibly infer from his vague allegation that these three nurses were deliberately indifferent to a serious medical need while he was in the infirmary. Merely "putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened . . . that *might* be redressed by the law" is not enough to state a claim under federal pleading standards. *Swanson v. Citibank, N.A*., 614 F.3d 400, 403 (7th Cir. 2010). These defendants will be dismissed.

### B. Failure-to-Protect Claims

He next asserts claims for failing to protect him from harm by other inmates.[1] The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). To be held liable for an Eighth Amendment violation, a defendant must have had "actual knowledge of an impending harm easily preventable, so that a

---

[1] Arguably these claims are distinct from his medical claims and could be severed from the case. *See Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). However, his medical and failure-to-protect claims share one defendant in common (Lieutenant Bradford) and some limited factual overlap in that they all stem from his hand problem. The Court will permit the claims to proceed together at this stage.

conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). Phrased another way, a prison employee must have "acted with the equivalent of criminal recklessness, in this context meaning that they were actually aware of a substantial risk of harm to [the plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008).

Mr. Brown alleges that on June 10, 2024, when he returned to the prison after having his surgery, he was taken to a cell in "8 center dorm" by Lieutenant Bradford. He claims the lieutenant loudly announced to the other inmates that he had MRSA. Several inmates became concerned about catching the disease and told Lieutenant Bradford and Lieutenant Lurie (first name unknown), who was also nearby, that if Mr. Brown was not moved out of the dormitory immediately they would assault him. Lieutenant Bradford and Lieutenant Lurie allegedly responded that they didn't care and then left the area. As soon as the officers were gone, Mr. Brown was assaulted by several inmates, exacerbating his hand injury and causing new injuries to his face.

He was then moved to another dormitory, but word soon spread to his new dormitory that he had received treatment for MRSA, and several inmates there threatened to assault him. He told Sergeant Porter about the threats, and she immediately moved him to a different dormitory. She walked to the new dormitory with him and announced to the inmates there that he did not have MRSA and that he had undergone treatment to remove the infection. She further added that "if anybody touch[es] him you have to deal with me." After she made this statement he had no further issues with the other inmates.

9

Giving him the inferences to which he is entitled, he has stated a plausible failure-to-protect claim against Lieutenant Bradford and Lieutenant Lurie. He claims these officers were on notice that he was at risk of harm if they left him in the dormitory where the inmates had threatened him, but they allegedly said they did not care and did nothing to help him. He was then attacked and injured shortly after they left the area. He will be permitted to proceed on an Eighth Amendment claim against these officers.

He also appears to name Sergeant Porter as a defendant in connection with this claim. However, as he describes it, she took immediate steps to help him when he alerted her to the threats he was receiving, moving him to a new dormitory and speaking to the inmates directly to dispel any rumors about him having a contagious disease. He claims he had no further problems with the other inmates after she took those steps. He has not alleged a plausible failure-to-protect claim against Sergeant Porter. *Klebanowski*, 540 F.3d at 639.

## CONCLUSION

For these reasons, the Court:

(1) **GRANTS** the plaintiff leave to proceed against Sergeant Drago, Sergeant Franklin, Sergeant Porter, Lieutenant Talbot, Sergeant Smith, Sergeant Hogan, and Lieutenant Bradford in their personal capacity for money damages for denying him medical care for MRSA in violation of the Eighth Amendment;

(2) **GRANTS** the plaintiff leave to proceed against Lieutenant Bradford and Lieutenant Lurie in their personal capacity for money damages for failing to protect him from harm by other inmates in violation of the Eighth Amendment;

(3) **DISMISSES** all other claims;

(4) **DISMISSES** C. Herr, Campbell, Due, Brown, Vasquez, Evans, Pasley, Alice, Kerri, Narda, Sitcon Officer, GSC, Officer (GSC) Working 7 Dorm, Patel, Jackson, Hampton, and Nurse Unnamed (A2C) as defendants;

(5) **DIRECTS** the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sergeant Drago, Sergeant Franklin, Sergeant Porter, Lieutenant Talbot, Sergeant Smith, Sergeant Hogan, Lieutenant Bradford, and Lieutenant Lurie and to send them a copy of this order and the complaint (ECF 1) pursuant to 28 U.S.C. § 1915(d);

(6) **ORDERS** the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available; and

(7) **ORDERS** Sergeant Drago, Sergeant Franklin, Sergeant Porter, Lieutenant Talbot, Sergeant Smith, Sergeant Hogan, Lieutenant Bradford, and Lieutenant Lure to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on September 6, 2024.

s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN, JUDGE  
UNITED STATES DISTRICT COURT